UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| JAMES LOWRY, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 2:09CV29MLM |
| MICHAEL J. ASTRUE, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Plaintiff James F. Lowry for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 17. Defendant filed a brief in support of the Answer. Doc. 22. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

**I.
PROCEDURAL HISTORY**

On October 19, 2006, Plaintiff filed an application for disability benefits. Tr. 69-73. The application was denied initially. Tr. 33-38. Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") James Steitz on January 14, 2009. Tr. 10, 20, 47. The ALJ determined that Plaintiff was under disability from June 25, 2006, through September 7, 2008. The ALJ further determined, that commencing September 8, 2008, through the date of the decision, Plaintiff was not under a disability. Tr. 10-19. The Appeals Council denied Plaintiff's Request for Review on April 17, 2009. Tr. 1-5. Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

3

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged a disability onset date of June 25, 2006, based on problems with his back, hip, ankle, feet, shoulder, high blood pressure, and depression. The ALJ found that from June 25, 2006, through September 7, 2008, Plaintiff had the RFC to perform sedentary work, except he had the inability to maintain attention and concentration for an eight hour workday; that from June 25, 2006, through September 7, 2008, there were no jobs which existed in significant numbers which Plaintiff could perform and that, as such, Plaintiff was under a disability for that period; that after September 7, 2008, Plaintiff made medical improvement; that commencing September 8, 2008, Plaintiff has not had an impairment or combination of impairments which meet or equal a Listing; that commencing September 8, 2008, Plaintiff has had the RFC to perform the full range of light work, although he could not perform his past relevant work; that there was work in the economy which Plaintiff can perform; and that, therefore, Plaintiff was not disabled as of September 8, 2008. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in determining Plaintiff made medical improvement. Plaintiff also contends that the ALJ erred by relying on the Medical-Vocational Guidelines.

**A.     Plaintiff's Medical Improvement:**

Upon finding that Plaintiff had made medical improvement and that he was not disabled as of September 8, 2008, the ALJ considered Plaintiff's medical records both before and after that date. Plaintiff's records prior to September 8, 2008, were significant because they showed that Plaintiff

8

continued to make medical improvement and that his depression was related, at least in part, to his physical pain, which improved. Plaintiff had microdisckectomy on June 27, 2006. Tr. 147. He had an "excision Hagland's deformity R" and repair of his "Achilles tendon R" on April 9, 2008. Tr. 262. The medical-improvement standard requires an ALJ to compare a "claimant's current condition with the condition existing at the time [he] was found disabled." Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2009). As stated by the Eighth Circuit:

> The regulations provide that determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine the following:
>
>> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.
>
> This sequential analysis for cessation of benefits includes the five steps to be followed in an initial disability determination. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993).

Id. at 945-46 (citing Dixon v. Barnhart, 324 F.3d 997, 1000-1001 (8th Cir. 2003) (citing 20 C.F.R. § 404.1594(f)).

First, the ALJ considered a November 20, 2007 report prepared by Stephanie Reid-Arndt, Ph.D., in which Dr. Reid-Arndt stated that Plaintiff's depression significantly affected his daily life;

9

that Plaintiff had a single episode of severe depression; and that Plaintiff had a GAF of 34.[1] The ALJ further considered that a January 11, 2008 x-ray of Plaintiff's right shoulder showed mild acromicoclavicalur joint arthropathy and that it was otherwise unremarkable. The court notes that, on this date, Jon Rampton, D.O., reported that Plaintiff was alert; that Plaintiff's shoulders had decreased range of motion due to pain in all directions except "down low"; and that Dr. Rampton recommended that Plaintiff lose weight. Tr. 246. The ALJ also considered that a January 21, 2008 x-ray of Plaintiff's right hip showed no abnormalities and that x-rays of the lumbar spine showed degenerative disc disease at L4-L5 and L5-S1. The court notes that x-rays of January 21, 2008 also showed that there was "no evidence of acute fracture or dislocation of the right ankle"; that there were "unremarkable bony structures of the right hip"; and that Plaintiff's lumbar spine had "minimal retrolistheseis" on L4 and L5. The ALJ considered that Plaintiff had a lumbar epidural steroid injection on February 6, 2008, and that, thereafter, he was described as ambulating without difficulty.

The ALJ considered that Jonathan Fallis, D.P.M., examined Plaintiff on March 12, 2008, due to foot pain with prolonged standing and that Dr. Fallis reported that Plaintiff had pain upon palpation and that his pain in the medial ankle into the foot was related to lumbar disc disease. The ALJ further considered that a March 13, 2008 MRI of the right ankle and foot showed evidence of a tendon tear and that the bony growth associated with the medial aspect of the Achilles tendon appeared to represent a prominent enthescophyte. The ALJ considered that J.R. Vale, M.D., a

---

[1] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

10

medical consultant for the Division of Vocational Rehabilitation, reported on April 2, 2008, that Plaintiff's status was post discectomy; that he had a large heel spur; that Plaintiff's maximum lifting and carrying ability was *fifteen to twenty pounds*; that Plaintiff could stand and walk two to four hours out of eight; that Plaintiff could *occasionally stoop, crawl, and climb*; and that Plaintiff should avoid impact vibrations. Tr. 16.

The ALJ considered that on April 9, 2008, Plaintiff had right foot surgery, with screws being placed in his foot, and that Plaintiff testified that cold weather makes his right foot pain worse; that he uses a cane; that he cannot walk far due to pain; and that he wears a brace to stretch his tendon. Tr. 16. The court notes that Dr. Fallis reported on April 14, 2008, that Plaintiff's pain was *"well controlled"* and that Plaintiff was using crutches; that on April 28, 2008, Dr. Fallis reported that Plaintiff said his *pain was improving*; that on May 5, 2008, Dr. Fallis reported that Plaintiff said his *pain was improving*; and on May 19, 2008, Dr. Fallis reported that Plaintiff "*deni[ed] any pain*," that he had "tried regular shoegear with crutches," and that Plaintiff said he felt "better walking than the post-op shoe." Tr. 254-58. The court notes that on June 2, 2008, Plaintiff told Dr. Fallis that he had *decreased pain* and that he thought he could "get by with a cane." Tr. 259. Also, on this date, Dr. Fallis gave Plaintiff permission to transition to full weight bearing "as tolerated." Tr. 259. On July 2, 2008, Dr. Fallis reported that Plaintiff said he had "*increased walking, decreased pain*"; that Plaintiff had *antalgic gait but improved*"; that Plaintiff had *decreased edema*; that Plaintiff was able to "*heel lift and stand on toes full WB*"; and that Plaintiff was to increase his activity level as tolerated. Tr. 260. On August 6, 2008, Dr. Fallis reported that Plaintiff said he had "*improved pain*, but stiffness" in the ankle; that Plaintiff had no edema, "*no pain with ROM or palpation*," "well healed cicatrix posterior heel"; and that Plaintiff was to continue activities as tolerated. Tr. 261.

11

The ALJ proceeded to consider Plaintiff's medical records since September 8, 2008. In particular, the ALJ considered that on September 8, 2008, Plaintiff demonstrated normal behavior; that Plaintiff was described as being *able to perform all activities of daily living* without assistance and that he *moved all four extremities with equal strength*. Tr. 17. The court notes also that emergency room records of this date reflect that Plaintiff presented with lower back pain and stomach discomfort; that Plaintiff could "ambulate independently"; that he demonstrated *normal behavior* appropriate for his age and situation; that he demonstrated willingness and ability to learn; that he oriented to person, place, and time; that he denied tingling or numbness; that he was able to speak clearly; that Plaintiff's *pain improved*; and that he was discharged the same day. Tr. 276-77.

The ALJ further considered that Plaintiff saw Terry L. Thrasher, D.O., on September 9, 2008, at which time Plaintiff stated he needed pain medication for his back and that he had trouble sleeping. The court further notes that Plaintiff saw Dr. Thrasher on November 3, 2008, on which date Dr. Thrasher reported that Plaintiff's neck was "supple"; that his heart was "RRR"; that Plaintiff said he needs more Darvocet; and that he was alert times three. Plaintiff also saw Dr. Thrasher on February 27, 2009, on which date Dr. Thrasher reported that Plaintiff presented needing his medication refilled; that his neck was supple; that his heart was "RRR"; and that he was alert times three. Tr. 300-301. Dr. Thrasher's notes of November 2008 and February 2009 are otherwise not legible.

The ALJ found credible Plaintiff's allegations of pain from his alleged onset date through September 7, 2008; that during that period Plaintiff was restricted to sedentary work; that "due to the combination of pain and depression, [Plaintiff] was unable to maintain attention and concentration for an eight hour workday"; and that, "with these restrictions, [he] could not perform any jobs existing in significant numbers in the national economy." Tr. 17. The ALJ further found, based on the aforementioned medical records, that, as of September 8, 2008, Plaintiff had "only mild depression

12

not having more than [a] mild effect upon his activities of daily living, socialization, or for concentration, persistence and pace." Tr. 17. The ALJ concluded that, as of September 8, 2008, Plaintiff's depression did not have more than a minimal effect on his ability to perform work related activities. The ALJ found, therefore, that, as of September 8, 2008, Plaintiff could perform the full range of light work and that, based on the Medical-Vocational Guidelines, he was not disabled as of that date. Tr. 17.

Upon finding Plaintiff not disabled as of September 8, 2008, the ALJ determined that, as of September 8, 2008, Plaintiff's medical conditions could reasonably be expected to produce symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms was not credible, to the extent they are inconsistent with his RFC. Upon discounting Plaintiff's allegations, the ALJ considered that the records of Dr. Thrasher, who was Plaintiff's current treating physician, failed to reflect that Dr. Thrasher advised Plaintiff not to attempt to perform some type of work. A record which contains no physician opinion of disability detracts from claimant's subjective complaints. See Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981).

To the extent Plaintiff contends that his depression was severe and that the record does not establish that his depression became less severe, the court notes that the ALJ did not find that Plaintiff's depression was ever severe; rather, the ALJ found that, prior to September 8, 2008, Plaintiff was unable to maintain attention and concentration due to combination of pain and depression. Indeed, substantial evidence on the record establishes that, as of September 8, 2008, Plaintiff's pain and his ability to maintain attention and concentration had improved to a level which did not preclude him from engaging in substantial gainful employment. Although Dr. Reid-Arndt reported in 2007 that Plaintiff would not be able to work due to pain and depression, Plaintiff

reported on June 31, 2008, that he did not suffer from depression or "other emotional disorder." Tr. 243. Records from Plaintiff's April 9, 2008, foot surgery reflect that a neurological review did not show that Plaintiff had neurologic symptoms, including "insomnia," "depression," or "anxiety." Tr. 265. Further, emergency room records of September 8, 2008, specifically state, as set forth above, that Plaintiff demonstrated normal behavior and could "perform all activities of daily living without assistance." Tr. 276. The ability to perform activities of daily living is inconsistent with an allegation that a claimant is disabled. See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000).

To the extent that Plaintiff contends that the record does not establish that his pain showed medical improvement, the court notes that after his April 2008 surgery, records reflect that Plaintiff continued to improve. On April 14 and 21, 2008, Plaintiff's pain was described as "well controlled"; on April 28 and May 5, 2008, Plaintiff reported that his pain was improving; on May 19, 2008, Plaintiff denied having pain; on June 2, 2008, Plaintiff had "decreased pain"; on July 2, 2008, Plaintiff reported "increased walking" and decreased pain" and he was instructed to increase his activity level; and on August 6, 2008, Plaintiff's pain had improved and he had no swelling. Tr. 254-61. Further, September 8, 2008 records reflect that Plaintiff was able to ambulate independently, move all four extremities equally, and could perform all activities of daily living. See Young, 221 F.3d at 1069; Brown, 390 F.3d at 540. To the extent that there were conflicts in the evidence of record, it is the ALJ's role to resolve conflicts among various treating and examining doctors. See 20 C.F.R. § 416.927(d) (2003) (outlining how medical opinions are to be weighed); Hudson v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (citing Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir.1995) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (internal

14

citations omitted); Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir.2000) (discussing an ALJ's role in resolving conflicts among medical opinions).

Only after he considered all of the evidence of record, including Plaintiff's medical records and his testimony, did the ALJ find that Plaintiff has the RFC for the full range of light work. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'") (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ identified Plaintiff's functional limitations and then assessed his work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Only after doing so did the ALJ find that, since September 8, 2008, Plaintiff has the RFC to perform the full range of light work. The court finds that the ALJ's determination of Plaintiff's RFC is based on substantial evidence.

Upon determining that Plaintiff made medical improvement since the date he had been found disabled, the ALJ considered the severity of Plaintiff's alleged impairments and determined that his impairments do not meet or equal a Listing; that Plaintiff's RFC did not permit him to perform his past relevant work; and that Plaintiff can perform other work. Delph, 538 F.3d at 945-46. The court finds that substantial evidence supports the ALJ finding that Plaintiff had medical improvement as of September 8, 2008, and that he was not disabled as of this date. The court further finds that the ALJ's decision in this regard is consistent with the Regulations and case law.

**B.      ALJ's Reliance on the Medical-Vocational Guidelines:**

The ALJ found that, as of September 8, 2008, Plaintiff can engage in the full range of light work. Tr. 18. Upon reaching this conclusion, the ALJ found that Plaintiff's alleged non-exertional limitations were not credible and, therefore, he relied upon the Medical-Vocational Guidelines to determine that work exists in substantial numbers which work Plaintiff is capable of performing.

Resort to the Medical-Vocational Guidelines is only appropriate when there are no non-exertional impairments that substantially limit the ability of Plaintiff to perform substantially gainful activity. Indeed, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical-Vocational Guidelines. See Robinson, 956 F.2d at 839. If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. See id. On the other hand, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)).

The court has found above that the ALJ's determination of Plaintiff's RFC was based on substantial evidence. Because the ALJ did not find that Plaintiff had non exertional impairments as

of September 8, 2008, the court further finds that the ALJ properly relied on the Guidelines. See Robinson, 956 F.2d at 839.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 17.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L . Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2010.